The cause was argued at considerable length, and with much ability, by Mr. Woods for the plaintiff, and by Mr. Ross for the defendant. After which the court charged the jury to the following effect, after recapitulating the testimony on both sides minutely.
The question is, which of these claims ought to prevail; and is naturally subdivided into two points; 1st, Whether the pretensions of the lessor of the plaintiff, as an actual settler, are preferable in law to the defendant’s, previous to the 23d August 1793, when his warrant was entered with the district surveyor? 2d, Whether since that period he is not vested with additional equity ?
The act of assembly of 3d April 1792, 3 Dall. St. Laws 209, certainly had in view the population of the back country, and the forming a barrier on the frontier lands north and west of the rivers Ohio and Alleghany, and Conewango creek, by placing numerous families thereon. Whether the titles are derived originally from labour bestowed on the ground, or disbursement of cash, no warrant or survey shall, by the 9th section, vest any title to such lands, “ unless the grantee has made, or shall within “*two years thereafter, make or cause to be made’an “ actual settlement thereon, by clearing, fencing and cultivating,[*64 at least two acres for every hundred acres contained “ in one survey, erecting thereon a messuage for the habitation “ of man, and residing or causing a family to reside thereon for “the space of five years next following his settling the same,” &c.
Link’s cabin being erected before the passing of the law, im- *64 powering the sale of these lands ; gives no equity either to him or the plaintiff; nor can the planting of a dozen hills of corn, deadening seven or eight trees, or marking the defendant’s name on the cabin, confer any right.
The improvements and cultivation of the lessor of the plaintiff will be found, on an accurate review of the evidence, to be inferior in extent to those of the defendant, in each distinct year, except 1797. The one depended on his own exertions, and was poor; the other could call to his assistance the services of his friends and connections, and commanded money. But the former possessed one strong prominent feature of an actual settler, a constant personal residence on the ground, unless when intimidated by the impending danger of a savage foe, encompassed by his small stock of provisions and bedding, and his few family utensils and implements of husbandry; while the latter was engaged as a volunteer in the public service, or lived with his father or brothers. In correct language, it is physically impossible that a man should have two homes at the same time. It may as well be said, that a body may be in different places the same instant. Acts are the most unequivocal proofs of the bent of the mind. Here McLaughlin’s intention to reside on the lands in dispute is completely demonstrated, by personal residence and a permanent adherence to the soil. The intent is executed in fact.
In Ewalt’s lessee v. Highlands, (4 Dall. 161,) at May assizes 1799, in this place, we delivered our explicit opinion, on due consideration, that “a personal residence must, in the nature “ of things, accompany an actual settlement, unless impending “ imminent danger exists, which would prevent a man of reason“able firmness of mind, from continuing on the land ; ” and we are now more firmly impressed with the correctness of those sentiments. But it has been asserted at the bar, that this construction would throw actual settlers into a worse situation than warrant holders, under the proviso contained in the close of the 9th section of the act of 3d April 1792. This we deny. That proviso only respects the progress of the improvement in clearing two acres for every 100 acres in each survey, erecting a messuage thereon, and residing thereon for five years ; it does not relate to the *commencement or origin of the title. *65] In the reason of the thing, the rights of actual settlers must depend on the priority of their settlements ; and a settlement necessarily involves in itself a personal residence of the party on the ground. And such is the legal idea of an improvement as depending on the act of 30th December 1786. 2 St. Laws, 488.
The light in which we have viewed the first point, renders it unnecessary to go into the second, in the present case. The court, conceiving that the lessor of the plaintiff is the first actual resident settler on the lands in question, according to the true meaning of the legislature, and entitled in that character *65 to recover the possession of the lands, will only add, that to his former right he has added the legal right of a warrant.
Messrs. Woods and Sample, pro quer.
Messrs. Ross and Young, pro def
Verdict for the plaintiff.
The same principles were again discussed the same day in the case of the lessee of James Scott v. William Anderson, when the court adhered to their opinion as before delivered, and the jury were ready to give a verdict conformable thereto, but the plaintiff suffered a nonsuit.